**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2020**

# In the Court of Appeals of Georgia

A20A0494. O'CALLAGHAN v. SAMPLES.

MERCIER, Judge.

Following the death of 67-year-old Michael Smallwood, Susan Angela Samples petitioned to probate his will in solemn form. Smallwood's sister, Kathy O'Callaghan, filed an objection to the petition, asserting, among other things, that Smallwood lacked testamentary capacity to execute the will. The probate court held an evidentiary hearing regarding the issues raised in the objection. Concluding that Smallwood had the requisite testamentary capacity and knowingly executed the will without any coercion or interference by other persons, the probate court granted the petition to probate the will. O'Callaghan appeals, and we affirm.[1]

---

[1] O'Callaghan originally filed her notice of appeal in the Superior Court of Floyd County, which transferred the appeal to this Court. See OCGA § 15-9-120 (2) (defining "probate court"); OCGA § 15-9-123 (a) ("Either party to a civil case in the

1. O'Callaghan argues that the probate court erred in finding that Smallwood had sufficient testamentary capacity to make a will. We disagree. When a probate court's findings in a non-jury trial are supported by any evidence, they must be affirmed on appeal. See *Amerson v. Pahl*, 292 Ga. 79 (1) (734 SE2d 399) (2012). And given this highly deferential standard, "we have no difficulty in affirming the probate court's finding of testamentary capacity" in this case. Id.

The record shows that Smallwood, a Vietnam veteran who never married or had children, had three siblings: two sisters, O'Callaghan and Jane McWhorter, and a brother, Wayne Smallwood. After Smallwood returned from Vietnam, he was diagnosed with post-traumatic stress disorder ("PTSD") and needed extra care, which McWhorter, his eldest sister, provided. According to McWhorter, she and Smallwood had a "very close" relationship, and she "became a mother figure to him" when their mother died. Nevertheless, Smallwood lived alone and generally was able to function day-to-day, despite some episodes of paranoia and other health issues.

---

probate court shall have the right of appeal to the Supreme Court or the Court of Appeals, as provided by Chapter 6 of Title 5."); Ga. Const. of 1983, Art. VI, Sec. I, Par. VIII ("Any court shall transfer to the appropriate court in the state any civil case in which it determines that jurisdiction or venue lies elsewhere.").

On March 27, 2014, Smallwood executed a will, bequeathing all of his real and personal property to McWhorter. He appointed Samples, McWhorter's daughter, as executor of his estate. The will was prepared by Leon Sproles, an attorney experienced in estate planning matters. Asked about his standard procedures for drafting a will, Sproles testified that he not only obtains pertinent information from the client, but also assesses the client's competence to execute the will. Sproles followed these standard procedures when preparing Smallwood's will. He met with Smallwood twice, had no doubt about Smallwood's competency, and would not have drafted the will had Smallwood seemed delusional or psychotic. Sproles reviewed the will with Smallwood and inquired as to his understanding of it. According to Sproles, Smallwood appeared to execute the will freely, voluntarily, and with knowledge of his actions. Sproles further noted that Smallwood "was happy with" the will, which represented "exactly what he wanted as far as disposition of his estate[.]"

Another attorney who practiced in the same building as Sproles witnessed the will's execution. The witnessing attorney testified that Smallwood seemed to understand what he was doing, appeared to be of sound mind, and had no difficulty taking part in the proceedings. As described by that attorney, Smallwood "certainly

3

seemed appropriate at the time to be able to execute the will and know . . . that these were his wishes."

Smallwood died in March 2018 from injuries sustained in a motor vehicle collision. Several months later, Samples petitioned to probate his will. O'Callaghan objected to the petition, claiming that Smallwood lacked testamentary capacity to execute the will and was not of sound mind. The probate court rejected O'Callaghan's objection and admitted the will to probate.

"Testamentary capacity exists when the testator has a decided and rational desire as to the disposition of property." OCGA § 53-4-11 (a). Ultimately, "[a] showing of testamentary capacity requires a showing that the testator was sane or of sound mind." *Meadows v. Beam*, 302 Ga. 494, 498 (2) (807 SE2d 339) (2017). Such capacity exists when a testator understands the purpose of a will, knows what property he has, remembers the persons related to him by blood and affection, and "has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property." *Amerson*, supra (citations and punctuation omitted). "This is a modest requirement, as testamentary capacity may be possessed by weak-minded or feeble individuals." *Meadows*, supra. (citations and punctuation

omitted). Only a "total absence of mind" destroys testamentary capacity. Id. (citations and punctuation omitted).

The evidence does not show a "total absence of mind" here. Both attorneys who took part in the preparation and/or execution of the will testified that Smallwood appeared to understand what he was doing and to be of sound mind when he signed the document. Samples also presented testimony from Smallwood's neighbor, who began helping him with household chores in 2014. The neighbor asserted that although Smallwood had some health problems, he was "always a perfect gentleman," and he knew "exactly what was going on[.]" In addition, a friend who had known Smallwood since 1988 testified that he never saw Smallwood act "out of his mind[.]" And a housekeeper who cleaned Smallwood's house weekly from 2005 until his death testified that he knew who his siblings were and what assets he had. Finally, Smallwood's understanding of his actions is demonstrated by a conversation he had with Samples in the spring of 2014. Samples testified that Smallwood called her to request that she serve as executor of his will. During that conversation, Smallwood explained that he was leaving his estate to McWhorter and that Samples should be prepared to deal with objections to the will from O'Callaghan.

On appeal, O'Callaghan notes that medical records from the Veterans Administration indicated that Smallwood had been diagnosed with several mental conditions, including PTSD, in 1987. Smallwood's testamentary capacity, however, must be assessed as of the date he executed his will. See *Amerson*, supra at 80 (1). That he suffered from mental infirmities before or after he signed the will may be relevant to the inquiry, but is not dispositive. See *Meadows*, supra at 494 (1). The controlling question is whether Smallwood had the testamentary capacity to execute the will on March 27, 2014. See *Amerson*, supra; *Tuttle v. Ryan*, 282 Ga. 652 (653 SE2d 50) (2007).

Given the evidence presented, the probate court was authorized to conclude that Smallwood understood what he was doing when he signed the will, knew what assets he owned and who the potential beneficiaries of his estate were, and had sufficient intellect to rationally decide how he wanted to dispose of his property. Accordingly, the probate court did not err in determining that he had the necessary mental capacity to execute his will. See *Amerson*, supra; *Tuttle*, supra at 652-653; see also *Woods v. Stonecipher*, 349 Ga. App. 698, 699-700 (1) (824 SE2d 633) (2019) ("[I]n reviewing this question of the sufficiency of the evidence in the context of a challenge to a will, a stringent standard must be met in order to set aside a will, as this

deprives a person of the valuable right to make a will.") (citation and punctuation omitted).

2. O'Callaghan claims that the probate court erred in probating the will because Samples failed to timely respond to her requests for admissions. Pursuant to OCGA § 9-11-36 (a) (2), a request for admission

> is admitted unless, within 30 days after service of the request or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney[.]

It appears that O'Callaghan served her requests for admission on July 12, 2018.[2] Because the thirtieth day after service fell on a Saturday (August 11, 2018), Samples was required to respond on the following Monday, August 13, 2018. See OCGA § 1-3-1 (d) (3) ("[W]hen a period of time measured in days . . . is prescribed for the exercise of any privilege or the discharge of any duty, . . . if the last day falls on Saturday or Sunday, the party having such privilege or duty shall have through the following Monday to exercise the privilege or to discharge the duty."). The record

---

[2] Although the record does not contain a certificate of service for these discovery requests, the requests were signed and filed on July 12, 2018. O'Callaghan also asserts that she served her requests on this date.

7

shows that Samples timely served her responses to the requests for admission by placing them in the mail on August 13, 2018. See OCGA § 1-3-1 (d) (3); OCGA § 9-11-5 (b) ("Service by mail is complete upon mailing."); *Cruickshank v. Fremont Inv. & Loan*, 307 Ga. App. 489, 491-492 (705 SE2d 298) (2010). We recognize that Samples did not *file* her responses and/or her Certificate of Service of Discovery Materials until several weeks later. But "the admission for failure to respond contemplated by OCGA § 9-11-36 (a) (2) is tied to whether requestee 'serves' the response." *Cruickshank*, supra at 492 (citation omitted). Regardless of when Samples filed her responses with the probate court, they were timely served within the required 30-day period. See id.; OCGA § 9-11-36 (a) (2).

Alternatively, O'Callaghan argues that Samples failed to respond sufficiently to two of the requests for admission, to which Samples stated that she lacked sufficient knowledge to admit or deny the requests. See OCGA § 9-11-36 (a) (2) ("An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny."). These two requests for admission, however, involved union benefits and

8

life insurance proceeds to be paid to Smallwood's heirs.[3] O'Callaghan has not shown that either request related to Smallwood's mental capacity to execute a will. Even if deemed admitted, therefore, the requests do not undermine the probate court's determination that Smallwood possessed the necessary testamentary capacity.

3. O'Callaghan further argues that Samples failed to notify her before the evidentiary hearing that a court reporter would be transcribing the proceedings. But she has pointed to no evidence that she objected to the presence of the court reporter or raised this issue below, undermining any claim of error based on the court reporter's presence. See *Champion Windows of Chattanooga v. Edwards*, 326 Ga. App. 232, 242 (2), n.9 (756 SE2d 314) (2014) ("Issues and objections not raised in the trial court and ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal.") (citation and punctuation omitted). And even if O'Callaghan was entitled to pre-hearing notice that a court reporter would be at the hearing,[4] she has not shown that the lack of notice harmed her. See *Austell*

---

[3] Samples explicitly denied a request for admission that asked Samples to admit that life insurance and union payments made to all three of Smallwood's siblings "reflect[ed] the true understanding, desire and wishes of Michael D. Smallwood for the disposition of all of his property, both real and personal, upon his death[.]"

[4] See Uniform Probate Court Rule 10.4 (If a party desires that a hearing or trial be reported by a court reporter, "[s]uch party shall immediately notify the court and

9

*HealthCare v. Scott*, 308 Ga. App. 393, 395 (1) (707 SE2d 599) (2011) ("In order to constitute reversible error, both error and harm must be shown.") (citation and punctuation omitted). Lastly, we find no merit in O'Callaghan's claim that she has been "disadvantage[d]" in this appeal because she was unable to secure a copy of the transcript from the court reporter. The original transcript is contained in the appellate record, which has been available for O'Callaghan's review.

4. In her final enumeration of error, O'Callaghan argues that the probate court erred in determining that Samples had submitted Smallwood's original will to the court. At the conclusion of the evidentiary hearing, the probate court stated that it did not have Smallwood's original will, noting that what appeared to be a photocopy had been filed with Samples's petition. The court explained that it would withhold its final ruling to give Samples an opportunity to submit the original will or amend her petition with the averments necessary to probate a photocopy of the will. Both parties agreed to the procedure, and in its final ruling issued approximately two months later, the probate court found that

> although the initial petition was filed with a copy of the Last Will and Testament of Michael D. Smallwood, the original document was

---

opposing counsel in writing when such arrangements have been made.").

10

thereafter submitted, and that there is no question that the Last Will and Testament, under date of March 27, 2014, is, in fact, an original and not a copy and any objections or other matters relating to the fact that a copy of said Last Will and Testament was submitted are no longer relevant and/or material in this matter.

O'Callaghan waived any objection to the probate court's procedure for obtaining the original will by explicitly agreeing to that procedure. See *Lamb v. Fulton-DeKalb Hosp. Auth.*, 297 Ga. App. 529, 532 (1) (677 SE2d 328) (2009) ("Having acquiesced in the trial court's procedure, [appellant] cannot now complain of it."). And we can discern no basis for rejecting the probate court's factual finding that the original will was submitted after the hearing. See *Cuyler v. Allstate Ins. Co.*, 284 Ga. App. 409, 411 (2) (643 SE2d 783) (2007) ("[I]t is well established that the burden is on the party alleging error to show it by the record, and there is a presumption in favor of the regularity of all proceedings in a court of competent jurisdiction.") (citation and punctuation omitted). Although O'Callaghan now complains that Samples failed to serve her with "the filing of an original Will," she has not demonstrated that she was harmed by any lack of service. Accordingly, this claim of error provides no basis for reversal. See *Austell HealthCare*, supra.

*Judgment affirmed. Miller, P. J., and Coomer, J., concur.*

11